UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD GLENN SCHMOLL,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br><br>    Defendant. | Case No. 19-cv-04542-NC<br><br>**ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR PAYMENT OF BENEFITS**<br><br>Re: Dkt. Nos. 24, 26 |

Plaintiff Harold Glenn Schmoll appeals from defendant Commissioner Andrew M. Saul's denial of his application for Social Security Widower's Insurance Benefits. Before the Court are the parties' cross-motions for summary judgment. At issue is whether the Social Security Administration unconstitutionally discriminated against Schmoll when it applied a duration-of-marriage requirement when the only reason Schmoll could not satisfy that requirement was because of California's refusal to recognize same-sex marriage. As applied here, the duration-of-marriage requirement was discriminatory and the Court accordingly GRANTS Schmoll's motion for summary judgment.

**I.   Background**

Harold Glenn Schmoll and his late husband, Dr. Lowell Houser, met in November 1961 and were together for almost 47 years. *See* Dkt. No. 22 ("AR") at 112. In 1996, exactly 35 years after they met, Schmoll and Dr. Houser shared a commitment ceremony

in San Francisco in the presence of their family and friends to renew their love for one another. *Id.* at 55–56, 146–47, 149–51. Schmoll and Dr. Houser were unable to marry, however, until July 25, 2008, one month after same-sex marriage became legal in California. *Id.* at 16, 29. Dr. Houser passed away shortly after on August 16, 2008. *Id.* at 126.

On December 10, 2014, Schmoll applied for widower's insurance benefits from the Social Security Administration ("SSA"). *Id.* at 19–21. The SSA denied Schmoll's application, explaining that Schmoll did not qualify for widower's insurance benefits because his marriage to Dr. Houser did not last at least nine months. *Id.* at 31–33, 38. The SSA further stated that Schmoll and Dr. Houser's 1996 commitment ceremony did not qualify as proof of a domestic partnership because they did not register their partnership with the state. *Id.*

On August 4, 2016, Schmoll requested a hearing before an administrative law judge ("ALJ"). *Id.* at 49–54. The ALJ again denied Schmoll's application. *Id.* at 17. Although the ALJ found that the commitment level and authenticity of Schmoll's marriage was not at issue, she concluded that there was "no basis in the law for finding that a marriage existed prior to July 25, 2008." *Id.* at 16. Schmoll appealed and the Appeals Council affirmed. *Id.* at 5–8.

Schmoll now seeks judicial review of the SSA's decision. *See* Dkt. No. 1. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 10, 12.

**II.   Legal Standard**

Section 405 of the Social Security Act permits judicial review of any final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g). The reviewing court has the "power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether it applied the correct legal standards. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

### III. Discussion

#### A. Statutory Framework

The Social Security Act provides for widow's and widower's insurance benefits, or survivor's benefits, to surviving spouses. *See* 42 U.S.C. § 402(e)–(f). These two provisions allow a surviving spouse to collect a monthly stipend based on their deceased spouse's previous income. In relevant part, the Act defines a "widower" as "the surviving husband of an individual, but only if . . . he was married to her for a period of not less than nine months immediately prior to the day on which she died . . . ." 42 U.S.C. § 416(g)(1). Survivors of non-marital legal relationships in which the survivor has the same intestate inheritance rights as a surviving spouse are also considered "widows" and "widowers" for purposes of Social Security benefits. *See* 42 U.S.C. § 416(h)(1)(A)(ii). To make this determination, the Act requires the SSA to assess whether the State in which the deceased individual was domiciled would find that individual was validly married at the time of death. *See* 42 U.S.C. § 416(h)(1)(A).

The duration-of-marriage requirement was enacted "as a general precaution against the payment of benefits where the marriage was undertaken to secure benefit rights" and not the "traditional benefits" of marriage. *Weinberger v. Salfi*, 422 U.S. 749, 777, 780 (1975) (citing H.R. Rep. No. 92-231, p. 55 (1971); U.S. Code Cong. & Admin. News 1972, p. 5042). Thus, to mitigate potentially harsh results, several exceptions to this requirement exist, including accidental death, death in the line of duty as an active serviceperson, or where a couple had been previously married for more than nine months prior to their first divorce. 42 U.S.C. § 416(k). The duration-of-marriage requirement also does not apply in cases involving delayed marriage to a second spouse due to state laws prohibiting divorce of an institutionalized first spouse. *See* 42 U.S.C. § 416(g)(2). Likewise, a surviving spouse also qualifies for survivor's benefits notwithstanding the duration-of-marriage requirement if he is the biological or adoptive parent of the deceased individual's child. *See* 42 U.S.C. § 416(c)(1), (g)(1).

Although the Act uses gendered language, there is no longer any requirement that

3

the surviving spouse was the opposite sex of the deceased since the Supreme Court's decision in *United States v. Windsor*, 570 U.S. 744 (2013). In *Windsor*, the Supreme Court held that Section 3 of the Defense of Marriage Act ("DOMA"), which excluded "same-sex partner[s] from the definition of 'spouse' as that term [wa]s used in federal statutes," was unconstitutional. *Id.* at 751–52, 774. To implement the Supreme Court's decision in *Windsor*, the SSA now pays benefits to surviving spouses of same-sex marriages on the same terms and conditions that they are paid to survivors of opposite-sex marriages. *See Same-Sex Couples*, Social Security Administration, https://www.ssa.gov/people/same-sexcouples; *Introduction to Same-Sex Marriage Claims*, Social Security POMS GN 00210.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0200210001.

### B.   Level of Scrutiny

As a threshold matter, the Court must first determine the appropriate level of scrutiny. If, as the SSA argues, the duration-of-marriage requirement is facially neutral and merely disproportionately impacts same-sex couples, then the Court must apply rational basis review. *Cf. Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact."). On the other hand, if the duration-of-marriage requirement incorporates and relies on state law that discriminates on the basis of sexual orientation, it is subject to a heightened level of scrutiny. *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 484 (9th Cir. 2014) ("*Windsor*'s heightened scrutiny applies to classifications based on sexual orientation.").

The duration-of-marriage requirement is inextricable from underlying California law which classifies on the basis of sexual orientation. *Cf. Cox v. Schweiker*, 684 F.2d 310, 317 (5th Cir. 1982) (By "explicitly referring to state law on [marriage], makes relevant the issue of the constitutionality of a particular state law."). Relevant here, the Act provides two qualifications before an individual is considered a widower for Social Security purposes. First, an individual is a widower if "the courts of the State in which he was domiciled at the time of death . . . would find that such applicant and such insured

4

individual were validly married at the time such insured individual . . . died." 42 U.S.C. § 416(h)(1)(A). Second, an individual qualifies as a widower "only if . . . he was married to her for a period of not less than nine months immediately prior to the day on which she died." 42 U.S.C. § 416(g)(1). The Act's explicit command to consider state law requires the Commissioner to rely on California law regarding marriage when adjudicating Schmoll's application.

The SSA contends that its reliance on California law was limited to California law as it existed in August 2008—*i.e.*, when it recognized same-sex marriages—because § 416(h) only requires the Commissioner to consider state law at the time of the insured individual's death. *See* Dkt. No. 32 at 4. Once it determined that Schmoll's marriage was valid, the SSA considered the duration-of-marriage requirement in § 416(g) and found that Schmoll did not qualify. The SSA's mechanistic application of § 416(g) and (h), however, ignores the broader context of California law. Until the California Supreme Court's decision in *In re Marriage Cases*, 43 Cal. 4th 757 (2008), California prohibited same-sex marriage. *See also* Cal. Fam. Code § 308.5 (repealed 2015). Thus, it was legally impossible for Schmoll and Dr. Houser to have been married for nine or more months prior to Dr. Houser's death in August 2008. The SSA's reliance on the duration-of-marriage requirement to deny Schmoll's application cannot be severed from California's unconstitutional law prohibiting same-sex marriage when that law was the sole reason keeping Schmoll from meeting that requirement. By conditioning eligibility for benefits on an impossible requirement, the SSA perpetuates California's previous denial of "the constellation of benefits that the States have linked to marriage . . . ." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2601 (2015).

The SSA's comparison of this case to disparate impact cases is not apt. *See, e.g.*, Dkt. No. 26 at 18–20. In each of those cases, the underlying law did not facially discriminate on an improper basis. *See, e.g.*, *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272, 274, 277 (1979) (upholding veteran's preference in state civil-service employment because it "was gender-neutral on its face" and "not originally enacted or

5

1    subsequently reaffirmed for the purpose of giving an advantage to males."). By contrast,
2    California's ban on same-sex marriage was intentionally discriminatory and discriminated
3    on an improper basis.
4         Because the SSA's decision is inextricable from an unconstitutional California law
5    that discriminates on the basis of sexual orientation, rational basis review is inappropriate
6    and the Court will apply heightened scrutiny. *See SmithKline Beecham Corp. v. Abbott*
7    *Labs.*, 740 F.3d 471, 484 (9th Cir. 2014) ("*Windsor*'s heightened scrutiny applies to
8    classifications based on sexual orientation.").

### C. Heightened Scrutiny

10   Heightened scrutiny requires the government to provide "a tenable justification
11   [that] describe actual state purposes, not rationalizations for actions in fact differently
12   grounded." *United States v. Virginia*, 518 U.S. 515, 535-36 (1996). Where, as here, the
13   application of heightened scrutiny is as-applied rather than facial, the government must
14   demonstrate that a justification exists for the policy as applied to the individual in question.
15   *See Witt v. Dep't of Air Force*, 527 F.3d 806, 819 (9th Cir. 2008). Those justifications
16   must demonstrate that the government's policy significantly furthers important
17   governmental interests and less intrusive means are unlikely to achieve substantially those
18   interests. *Id.*
19        Citing *Weinberger v. Salfi*, 422 U.S. 749 (1975), the SSA provides two
20   justifications for the duration-of-marriage requirement. *See* Dkt. No. 26 at 21. The SSA
21   argues that the duration-of-marriage requirement is justified by the government's need to
22   protect against sham marriages and administrative efficiency. *See id.* Neither justification
23   withstands heightened scrutiny as applied to Schmoll.
24        First, the Court notes that *Salfi* is distinguishable and not controlling here. In *Salfi*,
25   the Supreme Court applied rational basis review to the duration-of-marriage requirement
26   as applied to a widow. 422 U.S. at 754. Rational basis review applied because "a
27   noncontractual claim to receive funds from the public treasury enjoys no constitutionally
28   protected status . . . ." *Id.* at 772. Because the duration-of-marriage requirement was

rationally related to Congressional objectives to prevent sham applicants and administrative efficiency, it survived rational basis review. *Id.* at 781–84. *Salfi*, however, did not concern an applicant who was unconstitutionally prohibited from meeting the nine-month bar and was decided before the Supreme Court's decision in *Obergefell*. *See Obergefell*, 135 S. Ct. at 2604. Unlike Schmoll, the widow in *Salfi* was not unconstitutionally barred from marrying her deceased husband nine months prior to his death. *See id.* at 753–54. Here, however, Schmoll was prevented from meeting the duration-of-marriage requirement solely because of discriminatory state law. The SSA's decision to rely on that discrimination denied Schmoll "access to the 'constellation of benefits that the Stat[e] ha[s] linked to marriage." *Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017) (citing *Obergefell*, 135 S. Ct. at 2601). This invidious discrimination makes rational basis review inappropriate. Indeed, *Salfi* recognized that "Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional desire to harm a politically unpopular group . . . .'" *Id.* (quoting *U.S. Dep't of Agric. v. Murry*, 413 U.S. 508, 513–14 (1973)).

Next, the Court turns to the SSA's purported justifications. There is no question that the SSA's interest in guarding against abuse through sham marriages is an important one. The SSA fails to show, however, that its interest in preventing abuse could not be served through less intrusive means, such as an evidentiary hearing. Indeed, the record shows that the bright-line rule was a poor tool in this case. After an administrative hearing, the ALJ explicitly found that there was "persuasive and consistent evidence" showing that the authenticity and commitment level of Schmoll's marriage was not at issue. *See* AR at 28, 31. Instead of weeding out sham relationships, the SSA's application of the duration-of-marriage requirement in this case denied benefits to an authentic and committed marriage.

Likewise, administrative efficiency does not justify the duration-of-marriage requirement here. In the realm of heightened scrutiny, "there can be no doubt that 'administrative convenience' is not a shibboleth, the mere recitation of which dictates

7

1    constitutionality." *Frontiero v. Richardson*, 411 U.S. 677, 690 (1973). Moreover, it is not
2    clear that the efficiency of a bright-line rule is necessary. As the court noted in *Thornton*
3    *v. Commissioner of Social Security*, "the Administration is clearly capable of making these
4    case-by-case determinations and does so in every claim it processes." Dkt. No. 27,
5    *Thornton v. Comm'r of SSA*, No. CV-18-01409-JLR-JRC, Report and Recommendation at
6    18 (W.D. Wash. Jan. 31, 2020). The SSA already makes individualized determinations for
7    individuals in common-law marriages (*see* 20 C.F.R. § 404.726) and those who fit various
8    exceptions (*see* 42 U.S.C. § 416(c)(2), (h)(1), (g)(2)).

Almost five years ago, the Supreme Court held that "[t]he right to marry is fundamental as a matter of history and tradition." *Obergefell*, 135 S. Ct. at 2602. "[T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Id.* at 2604. Excluding same-sex couples from "the constellation of benefits that the States have linked to marriage . . . consigned [them] to an instability many opposite-sex couples would deem intolerable in their own lives." *Id.* at 2601. Those benefits include "the rights and benefits of survivors" such as those at issue here. *Id.*

Because the SSA's application of the duration-of-marriage requirement to Schmoll relies on California's unconstitutional discrimination against same-sex couples and does not survive heightened scrutiny, the Court finds that Schmoll is entitled to survivor benefits. Further proceedings are unnecessary as the ALJ already found that the authenticity and commitment level of Schmoll's marriage was not at issue. *See* AR at 28. Accordingly, the Court GRANTS Schmoll's motion, reverses the Commissioner's decision, and orders payment of survivor's benefits.

**IV.  Conclusion**

The Court GRANTS Schmoll's motion, reverses the Commissioner's decision, and REMANDS this case for calculation and payment of survivor's benefits.

**IT IS SO ORDERED.**

Dated: June 15, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge